JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SYLVIA HELLMAN

## DEFENDANTS

AMERICAN WATER WORKS SERVICE COMPANY, INC.

**(b)** County of Residence of First Listed Plaintiff   UNION
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   CAMDEN
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire; Console Mattiacci Law LLC
110 Marter Avenue, Suite 502
Moorestown, NJ 08057        215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | **PERSONAL INJURY** | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability |  |  | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander |  | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability |  | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 460 Deportation |
|  | ☐ 345 Marine Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
|  |  |  | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
|  |  |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence |  |  |  |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions |  |  |
|  |  | ☐ 550 Civil Rights |  |  |  |
|  |  | ☐ 555 Prison Condition |  |  |  |
|  |  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq. ("Title VII"); 29 U.S.C. §621, et seq. ("ADEA"); N.J.S.A. 10:5-1, et seq. ("NJLAD").
Brief description of cause:
Plaintiff brings claims against former employer for wrongful termination.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
12/12/2017

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **SYLVIA HELLMAN**<br>Westfield, NJ 07090 | : | **CIVIL ACTION NO.** |
|  | : |  |
| **Plaintiff,** | : |  |
| **v.** | : |  |
|  | : |  |
| **AMERICAN WATER** | : |  |
| **WORKS SERVICE COMPANY, INC.** | : | **JURY TRIAL DEMANDED** |
| 1025 Laurel Oak Road | : |  |
| Voorhees, NJ 08043 | : |  |
| **Defendant.** | : |  |

## <u>COMPLAINT</u>

### I.  <u>INTRODUCTION</u>

After more than thirty (30) years of dedicated service, Sylvia Hellman ("Plaintiff") was unlawfully terminated by American Water Works Service Company, Inc. ("Defendant") on or about November 1, 2016, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). In the months prior to her termination, Plaintiff was subjected to discrimination on the basis of her sex and age, and the combination thereof, including being subjected to a hostile work environment by her substantially younger, male manager, Roger Hammer ("Hammer"). Hammer discriminated against Plaintiff because of her age and sex and micromanaged Plaintiff's daily conduct, spoke to her in an aggressive and hostile manner, isolated her within Defendant's organization and required her to prepare detailed instructions on how to perform her job so that a substantially younger employee could replace Plaintiff without disruption

to Defendant's business operations.  Deeply upset by the outrageous conduct of her supervisor, Plaintiff complained to Defendant of sex and age discrimination. Defendant did not conduct a meaningful investigation into her complaint and instead Plaintiff's termination followed approximately sixty (60) days later. Plaintiff seeks damages, including economic loss, compensatory, liquidated and punitive damages, costs and attorney's fees and all other relief that this Court deems appropriate.

## II.   PARTIES

1.      Plaintiff, Sylvia Hellman, is an individual and a citizen of the State of New Jersey. She resides in Westfield, New Jersey 07090.

2.      Plaintiff is female.

3.      Plaintiff is sixty (60) years old.

4.      Defendant American Water Works Service Company, Inc. is a New Jersey corporation with its principle place of business located at 1025 Laurel Oak Road, Voorhees, New Jersey 08043.

5.      Defendant purports to be the largest investor-owned water and wastewater utility company in the United States.

6.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the state of New Jersey.

7.      At all times material hereto, Plaintiff worked out of Defendants' various New Jersey locations, including without limitation, offices in Lawrence Township (989 Lenox Drive); Cherry Hill (131 Woodcrest Road); Voorhees (1025 Laurel Oak Road) and Plainfield (1341 North Avenue).

2

8.      At all times material hereto, Defendant employed fifteen (15) or more employees.

9.      At all times material hereto, Defendant acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of its business.

10.     At all times material hereto, Defendant was an employer within the meaning of the statutes which forms the basis of this matter.

11.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which forms the basis of this matter.

### III.   JURISDICTION AND VENUE

12.     The causes of action which form the basis of this matter arise under the Title VII, the ADEA and the NJLAD.

13.     The District Court has jurisdiction over Count I (Title VII) and Count II (ADEA) pursuant to 28 U.S.C. §1331.

14.     The District Court has supplemental jurisdiction over Count III (NJLAD) pursuant to 28 U.S.C. §1367.

15.     Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5.

16.     On or about February 3, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto and incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

17.     On or about September 13, 2017, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge.  Attached hereto, and marked as Exhibit "2," is a true and correct copy of that notice (with personal identifying information redacted).

18.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

**III.   FACTUAL ALLEGATIONS**

19.     Plaintiff was hired by Defendant's predecessor in interest, Elizabethtown Water Company in or about May, 1986 as a staff assistant.

20.     In 2003, after several promotions, Plaintiff held the position of Risk Manager.

21.     In or about 2003, Defendant acquired Elizabethtown Water Company.

22.     Defendant is the largest, national water and wastewater utility company in the United States, offering services to fifteen (15) million people in the United States and Canada.

23.     Defendant is a publicly traded entity, trading on the New York Stock Exchange under the symbol AWK.

24.     From approximately 2003 to approximately 2008, Plaintiff held the position of Director/Manager of Loss Control in Defendant's New Jersey American Water Company.

25.     Beginning in or about July, 2008, Plaintiff became Senior Analyst Risk Management. Following a reorganization within the company, her title changed to Treasury Analyst III ("T3"), though her duties remained unchanged from her role as Senior Analyst Risk Management.

4

26.   From in or about July, 2008 to in or about February, 2016, Plaintiff reported to James Li ("Li") (male, 60's),[1] Director of Risk Management.

27.   At all times material hereto, Plaintiff performed her job well, routinely receiving positive performance feedback and annual reviews.

28.   In or about February, 2016, Li left Defendant's employ and Plaintiff began reporting to Roger Hammer ("Hammer) (male, early 50's).

29.   Hammer reported to Deborah A. Degillio ("Degillio") (female, early 40's), Treasurer until on or about May 9, 2016.  Following Degillio's promotion to President of American Water Enterprises, Hammer reported to Jennifer Gambol ("Gambol") (female, early 40's), Treasurer.

30.   As T3, Plaintiff assisted Hammer in the coordination of all insurance matters for Defendant as well as the mitigation of Defendant's exposure to risk through a variety of means, including, without limitation, coordination with Defendant's Enterprise Risk Management Program.

31.   In the course of her exemplary performance of her job duties, she was instrumental in Defendant's efforts to recover insurance funds for first party property damage during catastrophic events, including without limitation, Hurricane Sandy. Plaintiff's efforts assisted Defendant in recovering more than twenty (20) million dollars lost amid events such as Hurricane Sandy.

32.   Shortly before Hammer was selected by Defendant to replace the departing Li, Degillio told Plaintiff of a long-service, older female employee who was asked to "re-interview"

---

[1] All allegations as to age (other than her own) are made to Plaintiff's information and belief.

for her position and whom Degillio did not select for continued employment. Degillio intimated to Plaintiff that she had terminated that employee because of her age.

33.     Immediately upon taking Li's position and beginning to supervise Plaintiff, Hammer subjected Plaintiff to hostile and discriminatory treatment because of her age and gender. Examples of same, include, without limitation:

> a.  On his first day supervising Plaintiff, Hammer told her "there is a new sheriff in town." Plaintiff understood his comment, despite her commendable performance, to mean that he intended to micromanage the day-to-day performance of her duties;
>
> b.  Hammer micromanaged her daily activities;
>
> c.  Hammer created meaningless work assignments for Plaintiff that she understood were intended to be cumbersome and increase her workload to an unsustainable level. By way of example, Hammer instructed Plaintiff to make a detailed list (including detail of several criteria) of each insurance policy in Defendant's files going back forty-years;
>
> d.  Hammer routinely used a harsh and negative tone in his communications (verbal and written) with Plaintiff;
>
> e.  Hammer sought to embarrass and demean Plaintiff in front of her colleagues and often publicly subjected her to unwarranted criticism;

6

    f. Hammer sought to isolate Plaintiff within Defendant's organization; and,

    g. Hammer told Plaintiff, without basis, that he "couldn't trust" her.

34. In addition to the conduct described above, Hammer also ordered Plaintiff to perform tasks that she understood to be for the purpose of transitioning her job to another, substantially younger worker. By way of example and without limitation:

    a. Hammer told her to prepare "cheat sheets" detailing and describing, by way of step-by-step instructions, each action required for the performance of her job duties; and,

    b. Hammer accelerated the deadlines for numerous projects that were within Plaintiff's exclusive knowledge or expertise, requiring that Plaintiff complete annual tasks months ahead of schedule.

35. Hammer did not treat his male direct report in the same manner that he treated Plaintiff, instead Hammer sought to socialize with his male direct report and allowed him to work from home frequently in contravention to Defendant's policies.

36. On or about July 18, 2016 Hammer gave Plaintiff an unwarranted, negative mid-year performance review.

37. The review was the first negative performance rating Plaintiff received during her decades of employment with Defendant.

38. On or about August 30, 2016, Defendant placed Plaintiff on an unwarranted "Performance Enhancement Plan" or "PEP."

39.     The PEP contained goals and objectives that had not been part of Plaintiff's job duties and responsibilities or her job description as maintained by Defendant prior to August 30, 2016.

40.     Plaintiff understood Defendant to be adding to her job duties in an effort to ensure that she would not successfully complete the PEP.

41.     Defendant told Plaintiff that she must sign the PEP despite the fact that it de facto re-wrote her job description.

42.     On September 1, 2016, Plaintiff emailed Melanie Kennedy ("Kennedy"), (female, 40's), Vice President of Human Resources and Labor Relations, Nicholl Salamone ("Salamone") (female, 40's), Human Resources Business Partner, and Hammer complaining of unlawful discrimination on the basis of her age and sex amid the conduct described herein above.

43.     In the same email, Plaintiff complained that the PEP represented a marked alteration in her job duties and job description.

44.     On or about September 2, 2016, Kennedy responded to say that if Plaintiff failed to sign the PEP, her termination could result.

45.     In that same email, Kennedy acknowledged Plaintiff's complaint of unlawful discrimination and referred Plaintiff to Carol Sibley ("Sibley"), Human Resources Business Partner.

46.     On or about September 8, 2016, Plaintiff spoke with Sibley via telephone and detailed the discriminatory conduct she had been subjected to as described herein above.

47.     Plaintiff subsequently met with Hammer and Salamone and signed the PEP amid Kennedy's threat of termination for failing to do so.

48.     Despite the dramatic alteration of her job description contained within the PEP, Plaintiff told Hammer that she was committed to performing her job well and remaining a successful employee of Defendant.

49.     Plaintiff worked diligently to meet all of the goals and objectives contained in the PEP, working extended hours and routinely asking Hammer for feedback on her performance relative to the PEP.

50.     Hammer did not provide any feedback on Plaintiff's performance relative to the PEP.

51.     Sibley, following her interview of Plaintiff, told Plaintiff that she wasn't experiencing "discrimination" but rather, "getting used to a new manager."

52.     Sibley stated that there were "issues" with Hammer's management of Plaintiff.

53.     To the best of Plaintiff's knowledge, Defendant did not conduct a meaningful investigation into her complaints of sex and age discrimination.

54.     On or about September 23, 2016, Hammer instructed Plaintiff to keep working on the "cheat sheets" and further stated, "make sure to include.....[information]....so anyone could pick it up and get a basic understanding of the type of information that is needed."

55.     Plaintiff continued to complete projects, including the "cheat sheets," detailing with precision the daily tasks required in the conduct of her job duties.

56.     On or about November 1, 2016, Defendant terminated Plaintiff during a meeting with Hammer and Salamone.

57.     Despite her thirty-years of service, Plaintiff was not even permitted to return to her office and retrieve her personal belongings.

9

58.     The only reason given for her termination was failure to meet the goals and objectives in her PEP.

59.     Prior to November 1, 2016, Plaintiff had never been told by Defendant that her performance to the PEP was unsatisfactory.

60.     Plaintiff was replaced by a newly hired, female employee nearly thirty years younger than Plaintiff.

61.     Defendant failed to provide a legitimate, non-discriminatory reason for the discriminatory and retaliatory conduct to which Plaintiff was subjected, including without limitation the hostile work environment to which she was subjected, her placement on a PEP, and her termination.

62.     Defendant's stated reason for the discriminatory and retaliatory conduct to which Plaintiff was subjected is false and pre-textual.

63.     Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory and retaliatory treatment of Plaintiff.

64.     Plaintiff's age was a motivating and/or determinative factor in connection with Defendant's discriminatory and retaliatory treatment of Plaintiff.

65.     Plaintiff's complaining of sex and age discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff.

66.     Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

67.    The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

68.    The discriminatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

69.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

70.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

71.    No previous application has been made for the relief requested herein.

## COUNT I - TITLE VII

72.    Plaintiff incorporates herein by reference paragraphs 1 through 71 above, as if set forth herein in their entirety.

73.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

11

74.     Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

75.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

76.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

77.     No previous application has been made for the relief requested herein.

## COUNT II – ADEA

78.     Plaintiff incorporates herein by reference paragraphs 1 to 77 above, as if set forth herein in their entirety.

79.     By committing the foregoing acts of discrimination against Plaintiff, Defendant violated the ADEA.

80.     Defendant's violations of the ADEA were intentional and willful under the circumstances, warranting the imposition of liquidated damages.

81.     As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

82.     Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

83.     No previous application has been made for the relief requested herein.

## COUNT III – NJLAD

84.     Plaintiff incorporates herein by reference paragraphs 1 to 83 above, as if set forth herein in their entirety.

85.     Defendant, by the above-described discriminatory and retaliatory acts, has violated the NJLAD.

86.     Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

87.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

88.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

89.     No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be a violation of the ADEA;

(c)     declaring the acts and practices complained of herein to be in violation of the NJLAD;

13

(d)     entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(e)     enjoining and restraining permanently the violations alleged herein;

(f)     awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory, and unlawful misconduct;

(g)     awarding liquidated damages;

(h)     awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(i)     awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(j)     awarding punitive damages to Plaintiff;

(k)     awarding Plaintiff such other damages as are appropriate under the Title VII, ADEA and the NJLAD; and

(l)     granting such other and further relief, including without limitation equitable relief, as this Court deems appropriate.

CONSOLE MATTIACCI LAW, LLC

Dated: December 12, 2017          BY: 

Stephen G. Console (04028-1983)
Katherine C. Oeltjen (57372013)
110 Marter Avenue, Suite 502
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852
*Attorneys for Plaintiff Sylvia Hellman*

14

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | ☐ FEPA<br>X EEOC | 530-2017-01435 |
| STATE OR LOCAL AGENCY: | | | |

| NAME (Indicate Mr., Ms., **Mrs.**)<br>Sylvia Hellman | HOME TELEPHONE NUMBER *(Include Area Code)*<br>██████ |
|---|---|
| STREET ADDRESS ██████ | CITY, STATE AND ZIP<br>Westfield, NJ 07090 | DATE OF BIRTH ██████ |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**American Water** | NUMBER OF EMPLOYEES,<br>MEMBERS  > 5,000 | TELEPHONE (Include Area Code)<br>800-565-7292 |
|---|---|---|
| STREET ADDRESS<br>131 Woodcrest Road | CITY, STATE AND ZIP<br>Cherry Hill, NJ 08003 | COUNTY<br>Camden |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>☐ Race   ☐ Color   X Sex   ☐ Religion   ☐ National Origin<br>X Retaliation   X Age   ☐ Disability   ☐ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>**Latest date 11/1/16** |
|---|---|

**A.**

**1.  Relevant Work History**

I was employed by Respondent for more than thirty years or for most of my adult-life. Specifically, I was hired by Elizabeth Town Water Company on or about May 1, 1986 as a staff assistant. Through the years, I received several promotions amid my strong performance. By 2003, I held the position of Risk Manager.  In or about 2003, Elizabeth Town Water company was acquired by American Water ("Respondent" or "American Water"). American Water is the largest national U.S. water and wastewater utility company in the United States, offering services to fifteen (15) million people in the U.S. and Canada. From 2003 to 2008, I held the position of Director/Manager of Loss Control in Respondent's New Jersey American Water Company. Starting in or about July, 2008 I began serving as Senior Analyst Risk Management. Following a reorganization within the company, my title changed to Treasury Analyst III, though my duties remained unchanged.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | |
| *Syl Hellman*<br>Date: 2/3/17   Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

**Sylvia Hellman v. American Water**
**EEOC CHARGE OF DISCRIMINATION**
**Page 2 of 5**

**Relevant Work History (Cont'd)**

From in or about July, 2008 to in or about February, 2016, I reported to James P. Li, ("Li") Director of Risk Management (male, 60's[1]). In or about February, 2016, Li retired and I began reporting to Roger Hammer, ("Hammer"), Director Risk Management (male, early 50's). Until May 9, 2016, Hammer reported to Deborah A. Degillio, ("Degillio") (female, early 40's), Treasurer. Following Degillio's promotion to President of American Water Enterprises, Jennifer Gambol ("Gambol") (female, early 40's) was promoted to Treasurer and became Hammer's direct supervisor.

As Treasury Analyst III ("T3"), I assisted Hammer in the coordination of all insurance matters for Respondent and in the mitigation of the Company's exposure to risk through a variety of means, including coordination with Respondent's Enterprise Risk Management Program.

At all material times, I performed my duties in a consistently exemplary manner. By way of example, I routinely received positive performance reviews. In addition, I was instrumental in Respondent's efforts to recover insurance funds for first party property damage during catastrophic events, including Hurricane Sandy. Due to my efforts, Respondent recovered over $20 Million lost to catastrophic events.

1. **Harm Summary**

I believe that Respondent has discriminated against me because of my sex (female) and age (59) and retaliated against me for complaining of sex and age discrimination. Evidence of discriminatory and retaliatory conduct includes, but is not limited to the following:

a. Not long before Hammer was announced as Li's replacement, Degillio relayed a story to me in which she complained of an employee asked by Respondent to re-interview for a position she had performed for over twenty years amid a "reorganization" and who was "in her fifties." In that conversation, Degillio intimated that she did not select the employee for the position because of her age and lengthy term of service with Respondent.

b. On Hammer's first day as my supervisor, in or about February, 2016, he lectured me at length and told me "there is a new sheriff in town" despite my consistently commendable performance. I understood Hammer's lecture to mean that he intended to micromanage the day-to-day performance of my duties.

c. Following Hammer's lecture, he began to assign me tasks that I understood to be intended to assist him in having a younger, inexperienced new hire perform my job duties following my departure from Respondent. For example, and without limitation:

---
[1] All ages are approximate based on Charging Party's information and belief.

**Sylvia Hellman v. American Water**
**EEOC CHARGE OF DISCRIMINATION**
**Page 3 of 5**

     i.     Hammer asked me to prepare "cheat sheets" detailing and describing, by way of step-by-step instructions, each action required for the performance of my job duties related to renewal of insurance policies and other T3 tasks; and,

     ii.    Hammer insisted that I complete aspects of my job (such as policy renewals) months in advance for his "review." I understood his requests as further preparation for my termination so that he could train a younger, less experienced employee without risking lapse of any policies and related coverage.

d. From February, 2016 to in or about July, 2016, I was subjected to the following discriminatory conduct, resulting in a hostile work environment, without limitation:

     i.     Hammer continued to micromanage my daily activities;

     ii.    Hammer created meaningless work assignments for me intended to be cumbersome and increase my work load to an unsustainable level. By way of example only, he instructed me to make a detailed list (including detail of several criteria and metrics) of each insurance policy in our files going back forty years. When I submitted the project to Hammer, he criticized me for a minor break in the list's organizational rubric. To the best of my knowledge, Hammer never referenced the document again;

     iii.   Hammer routinely used a harsh and negative tone in his email communications with me;

     iv.   Hammer embarrassed me in front of colleagues (of all levels) by demeaning me and criticizing my performance publicly. By way of example only, during a meeting with Gambol, Hammer asked me if I had completed a specific project when Hammer knew that I had not. Gambol, upon hearing my response to Hammer's request, verbally chastised me;

     v.    Hammer sought to isolate me within Respondent's organization, instructing me not to send emails or reports to Gambol, as I had done routinely in the past to her predecessor Degillio, without his approval; and

     vi.   Hammer told me, without reason, that he "couldn't trust me."

e. On or about July 18, 2016, Hammer gave me a negative mid-year performance review, my first negative performance review during my thirty-years with Respondent.

**Sylvia Hellman v. American Water**
**EEOC CHARGE OF DISCRIMINATION**
**Page 4 of 5**

f.  On or about August 30, 2016, Respondent placed me on a "Performance Enhancement Plan" or "PEP." The "PEP" contained goals and objectives that had not been part of my job duties and responsibilities prior to that day.

g.  Via email on September 1, 2016 I complained to Melanie Kennedy, ("Kennedy"), Vice President Human Resources and Labor Relations, (female, 40's), Hammer and Nicholl Salamone, ("Salamone"), Human Resources Business Partner, (female, 40's) of unlawful discrimination on the basis of my age and sex and reported that I felt I was being subjected to unwarranted criticism because of same.

h.  In that same email, I expressed that I was hesitant to sign the PEP because it represented a marked alteration in my job duties and had changed my job description.

i.  On or about September 2, 2016, Kennedy responded to my September 1st email by telling me that failure to sign the PEP could result in my termination. She also acknowledged my complaint of discrimination and referred me to Carol Sibley, ("Sibley"), Human Resources Business Partner.

j.  On or about September 4, 2016, Sibley emailed me and stated, "I have been asked to look into your situation regarding your performance plan."

k.  On or about September 8, 2016, I spoke with Sibley and detailed the discriminatory conduct outlined above.

l.  Subsequently, I met with Hammer and Salamone and signed my PEP. I further complained to Hammer that my job description had substantially changed, but I told him that I was committed to performing my job well and remaining with Respondent.

m.  I worked diligently to meet all of the goals and objectives contained on the PEP. Hammer did not provide any feedback on my performance relative to the PEP.

n.  In a follow-up conversation with Sibley, she told me that what I was experiencing wasn't "discrimination" but rather "getting used to a new manager." Sibley stated that there were "issues" with Hammer.

o.  On or about September 23, 2016, Hammer sent me an email, providing updated instructions on the "cheat sheets" discussed above. Hammer instructed, "make sure you include what the exact ask for information was for each individual so anyone could pick it up and get a basic understanding of the type of information that is needed."

p.  On or about November, 1, 2016, I was terminated by Respondent. The meeting took place in a conference room with Hammer. Salamone and a second representative of human resources. I was not permitted to return to my office to retrieve my belongings.

**Sylvia Hellman v. American Water**
**EEOC CHARGE OF DISCRIMINATION**
**Page 5 of 5**

q.  The only reason given for my termination was my failure to meet the goals and objectives stated in my PEP.

**B.  Respondent's Stated Reason**

Respondent has not provided a legitimate, non-discriminatory reason for the discriminatory and retaliatory treatment to which I have been subjected, including but not limited to: the creation of a hostile work environment; and my termination. The stated reason for my termination, failure to meet the objectives of the "PEP" is pre-textual. No other reason has been provided for my termination, nor has any reason for the other discriminatory and retaliatory conduct been given by Respondent.

**C.  Statutes and Bases of Allegations**

I believe Respondent has discriminated against me because of my age (59) and my sex (female) and retaliated against me form complaining of age and sex discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, et seq, ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, et seq. ("NJLAD").

# EXHIBIT 2

EEOC Form 161-B (11/16)

### U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  **Sylvia Hellman**<br><br>**Westfield, NJ 07090** | From:  **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |

☐   *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2017-01435** | **Legal Unit**<br>**Legal Technician** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** <u>WITHIN 90 DAYS</u> **of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[X]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court** <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> **before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*KJB*

9|13|2017

Enclosures(s)

**Kevin J. Berry**
**Acting District Director**

*(Date Mailed)*

cc:   **AMERICAN WATER**
**Kate C. Oeltjen, Esquire (Counsel for Charging Party)**
**Pamela S. Richardson, Employment & Labor Counsel (for Respondent)**