## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYLVIA HELLMAN, | : |
| Plaintiff, | :  Hon. Joseph H. Rodriguez |
| v. | :  Civil Action No. 1:17-cv-12961 |
| AMERICAN WATER WORKS SERVICE | : |
| COMPANY, INC. | :  **OPINION** |
| Defendant. | : |

This matter is before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claims of age and gender discrimination and retaliation under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the New Jersey Law Against Discrimination. The Court has considered the arguments advanced in the parties' briefs. For the reasons that follow, Defendant's motion will be granted with respect to Plaintiff's discrimination claims, but denied with respect to her retaliation claim.

## I.      Factual and Procedural Background

Sylvia Hellman ("Plaintiff") worked at American Water Works ("Defendant") until she was fifty nine years old. [Dkt. 40-2, Doc. 2 at ¶ 69.] She began working for Defendant in 2003 after the company acquired her then-place of employment, Elizabethtown Water Company. (Id. at ¶ 1.) As such, Plaintiff worked for both Defendant and its predecessor for a combined total of thirty years. [Dkt. 45-12, Doc. 12 at ¶ 2.]

### A. Plaintiff works under Mr. Li.

Following the 2003 acquisition, Plaintiff assumed the role of Claims Manager. [Dkt. 40-2, Doc. 2, at ¶ 2.] In 2008, Plaintiff was hired as a Senior Analyst Risk Manager and reported to James Li. (Id. at ¶¶ 3, 4.) Her responsibilities in that role included "(1) procuring insurance; (2) [overseeing] general administrative items; (3) compliance; and (4) enterprise risk management." (Id. at ¶¶ 4, 6). Plaintiff was responsible for all the administrative duties involved with the position including, among other things, taking minutes at meetings, arranging agendas, inputting invoices, checking insurance policy accuracy, and coordinating special projects. (Id. at ¶¶ 7-9). In 2014, Plaintiff's job title changed to Treasury Analyst III. (Id. ¶ at 10.) However, her responsibilities and paygrade remained the same and she still reported to Mr. Li. (Id.)

Although Plaintiff testified that Mr. Li was a difficult person to get alone with, she did not believe that he was biased against anyone based upon age or gender. (Id. at ¶ 16.) He also gave Plaintiff consistently positive performance reviews. [Dkt. No. 40-2, Doc. 2, at ¶ 11; Dkt. No. 45-11, Doc. 11, at ¶ 11.] However, in his 2013, 2014, and 2015 reviews, Mr. Li identified several areas in which Plaintiff's performance could improve. [Dkt. No. 40-2, Doc. 2, at ¶ 14.] He mentioned that Plaintiff needed to understand issues and gather all the facts before responding to inquiries; provide more details in her communications so as to offer accurate advice; and ensure the accuracy, relevancy and integrity of the information she provided. (Id.)

**B. Roger Hammer becomes Plaintiff's new manager.**

In 2016, Mr. Li retired and Mr. Hammer became Plaintiff's new manager. (Id. at ¶ 17.) Plaintiff initially had a positive impression of Mr. Hammer. (Id. at ¶¶ 19-20.) Following Mr. Li's retirement, however, Plaintiff's relationship with Mr. Hammer started deteriorating.

Shortly after assuming his position as Director of Risk Management, Mr. Hammer began to believe that Plaintiff was not satisfactorily performing the analytical and "higher functioning" aspects of her job. (Id. at ¶¶ 21-23.) In fact, Hammer asserted that Mr. Li handled all the analytical aspects of the Treasury Analyst III role, while Plaintiff handled only the administrative responsibilities. (Id. at ¶ 22.)  Consequently, Hammer felt that she was not proficient in the analytical aspects of the job. (Id.) Hammer testified that since Plaintiff's position was a higher level role, he expected her to perform her analytical responsibilities competently. (Id. at ¶ 23.) Hammer testified, and Plaintiff confirmed, that he spoke to Plaintiff informally about improving her work product and tried to give her constructive feedback. (Id. at ¶¶ 41-43.) He marked-up Plaintiff's assignments and attempted coaching her to improve her performance. (Id. at ¶¶ 28-30.) However, Hammer explained that he felt as though Plaintiff was not taking his suggestions seriously. (Id.) Hammer testified that, on one occasion, Plaintiff rolled her eyes at him after he asked that she revise an executive summary that he had requested that she write. (Id. at ¶¶ 28-30.)

Hammer also testified that he had several conversations with Human Resources to try to work with Plaintiff on fixing her performance deficiencies. He asked Laura Delles for advice on handling the issues he was having with Plaintiff's performance.

3

(Hammer Dep. 43:10-35:8.) Delles told him to coach Plaintiff informally to improve her work product. (Delles Dep. 41:2-10.) She advised Hammer that if the situation did not improve, placing Plaintiff on a Performance Enhancement Plan ("PEP") would be the next step. (Id. at 45:9-12.) Hammer also reiterated his concerns in Plaintiff's 2016 mid-year review, and informed her that she was not demonstrating senior level competence or meeting job expectations. [Dkt. 40-2, Doc.2, at ¶¶ 44-45.]

Plaintiff, on the other hand, testified that she frequently felt as though Hammer was micromanaging her work. She alleges that Hammer spoke to her condescendingly, did not communicate regularly with her, and did not copy her on pertinent emails. (Id. at ¶ 33.) She believed that Hammer was trying to get rid of her and that he constantly gave her "nonsense assignments, accelerat[ed] deadlines without reason, establish[ed] impossible deadlines, . . . and set[] Plaintiff up for failure." [Dkt. 45, at 3.]

Plaintiff also testified about the eye-rolling incident. She stated that she reacted that way because she was frustrated that Hammer asked her to revise a document that she had already changed multiple times. (Pl. Dep. 82:7-24.) The next day, Hammer called her into his office and reprimanded her, stating "there's a new sheriff in town." (Id. at 79:16-17.) Plaintiff was upset by this interaction and believed from that point on that Hammer was trying to get rid of her. (Id.) She also stated, however, that Hammer bullied other employees, and treated them harshly as well. (Dkt. 45, at ¶ 34.)

Meanwhile, in 2016 Plaintiff applied for a position as Operations Manager at American Water. (Id. at ¶ 35.) Although Plaintiff believed that her interview went well, she ultimately was not selected for the position. (Id. at ¶ 35-36.) She did not know the age, gender, or qualifications of the selected candidate. (Id. at ¶ 37.) All she stated is that

a Human Resources representative told her that Defendant did not hire her because it did not want to train her, and that a person younger than Plaintiff, but whose age she did not know, was ultimately selected. (Id. at ¶¶ 37-39; Pl. Dep. 170:20-172:21; 179:21-180:6.)

### C.  Plaintiff is placed on a Performance Enhancement Plan.

After attempting to work with Plaintiff informally, Hammer testified that he still thought Plaintiff's performance needed improvement. [Dkt. 40-2, Doc. 2, at ¶ 46.] On August 30, 2016, after consulting with Human Resources several times, Hammer and Nicholl Salamone, the Senior Human Resources Business Partner, placed Plaintiff on a Performance Enhancement Plan ("PEP"). (Id. at ¶ 53.) They also presented her with an updated job description, "clarifying her roles and responsibilities as Mr. Hammer (and the Company) viewed necessary for her position." (Id. at ¶ 54.) Neither Hammer nor Salamone mentioned Plaintiff's age or gender at that time. (Id. at ¶ 55.)

The PEP identified several areas where Plaintiff's improvement was required, including her need to demonstrate senior analytical ability, more carefully review her work product, explain all observations and issues clearly, prepare concise reviews of documents or situations before providing a solution, and ensure that Hammer reviewed her work before its release. (Id. at ¶ 51.) All of these deficiencies were included in Plaintiff's 2016 mid-year review, and several of them were mentioned as areas for growth in Mr. Li's performance reviews. (Id. at ¶¶ 49-51.)

The PEP contemplated a series of potential checkpoints at thirty days, sixty days, and ninety days. (Id. at ¶ 47.) At any of these checkpoints, Plaintiff faced the possibility

of being either removed from the PEP (if performance improved) or terminated (if performance did not improve). (Delles Dep. 61:15-62:3.) The PEP did not mention Plaintiff's age or gender, but focused solely on her perceived performance deficiencies. [Dkt. 40-2, Doc. 2, at ¶ 52.]

On September 1, 2016, Plaintiff sent an email to Melanie Kennedy, Vice President of Human Resources and Labor Relations, stating that she did not want to sign the PEP because she did not agree with Mr. Hammer's comments regarding her performance. (Id. at ¶ 58.) Furthermore, she believed that after her many years of dedicated and competent service to the company, Hammer's criticism was unjustified. (Id.) She stated that the PEP was Hammer's way of trying to get rid of her—an older, female employee— and that his actions were discriminatory. (Id.) Ms. Kennedy told Plaintiff that refusal to sign the PEP could result in her ultimate termination. (Id. at ¶ 59.) However, Ms. Kennedy understood that Plaintiff was upset by these event and informed her that Human Resources would investigate Plaintiff's allegations of discrimination. (Kennedy Dep. 30:19-31:8.) Nevertheless, Kennedy testified that she did not suspect discrimination at that time. (Id. at 22:2-9.) "[The company] had a new manager who was setting new expectations for his team, so [she] didn't have any concerns." (Id.)

Carol Sibley, Human Resources Business Partner, ultimately conducted the investigation into Plaintiff's complaint. [Dkt. 40-2, Doc. 2, at ¶ 61.] Sibley testified that she spoke with both Hammer and Plaintiff about the situation for approximately an hour each. (Sibley Dep. 133:9-22.) She also read through the PEP, the new job description, the 2016 mid-year review, and Mr. Li's 2014 and 2015 performance evaluations. (Id. at 99:7-11; 100:19-101:2.) Sibley ultimately found no evidence of age or

gender discrimination. [Dkt. No. 40-2, Doc. 2, at ¶ 63.] Sibley testified that her impression was that Plaintiff "was not used to having a manager who 'manages,' since she worked under Mr. Li for so long." (Sibley Dep. 108:5-18.) She further testified that although Hammer was a little overbearing, Sibley thought that he was genuinely trying to help Plaintiff, not trying to get rid of her. (Id. at 139:21-141:22.) However, she also mentioned that Hammer was upset about the accusations. (Id.) Sibley concluded that Hammer and Plaintiff were simply struggling to communicate with each other and that she was not worried about any sort of discriminatory or retaliatory behavior. (Id. at ¶ 139:21-141:22.)

### D. Plaintiff is terminated from American Water.

Hammer stated that despite the PEP and his informal guidance, he felt as though Plaintiff's performance was not improving. [Dkt. No. 40-2, Doc. 2, at ¶ 66.] Hammer further stated that because Plaintiff failed to meet the goals outlined in the PEP, he advised that Human Resources end Plaintiff's employment.[1] (Id. at ¶ 67.) On October 13, 2016, only a few days after Plaintiff officially began the PEP, Hammer sent documents to Ms. Salamone recommending Plaintiff's termination. [Dkt. No. 45-9, Doc. 9, at Ex. 19.]

Plaintiff was terminated from American Water on November 1, 2016. (Id. at ¶ 68.) She was then 59 years old. (Id. at ¶ 69.) Plaintiff testified that she was not permitted to collect her personal belongings and that she was "walked out" of the office. [Dkt. No. 45, at 5.] Hammer subsequently hired two younger female employees to fill Plaintiff's

---

[1] Although there was initially some dispute about who made the final decision to terminate Plaintiff's employment, Defendant submitted a declaration signed by Mr. Hammer, stating that he ultimately made the final decision and recommendation to Human Resources. [Dkt. No. 46-1, Doc. 1, at ¶¶ 5-7.]

position; one who eventually left the company of her own accord and one who is still employed at American Water. (Hammer Dep. 51:23-52:2; 57:8-20.) Hammer also hired two other male employee, one over the age of 40, and another female employee. (Id. at 55:15-57:17.) Plaintiff is the only employee Hammer has ever terminated. (Id. at 62:19-23.)

### E. Procedural History

Plaintiff filed the Complaint on December 12, 2017, alleging discrimination based on her age and gender under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the New Jersey Law Against Discrimination. [Dkt. No. 1.] After filing for an extension, Defendant filed a timely Answer on April 6, 2018. [Dkt. No. 5; Dkt. No. 12.] Plaintiff amended the Complaint on April 30, 2018, [Dkt. No. 17] and Defendant Answered on May 14, 2018. [Dkt. No. 20.] Following a period of discovery, Defendant moved for Summary Judgment on August 23, 2019. [Dkt. No. 40.]

Specifically, Defendant asserts that Plaintiff does not meet her burden of proof in showing that Defendant's reasons for firing Plaintiff, as well as for not hiring her as Operations Manager after her interview, were pretext. Defendant also states that Plaintiff does not establish the prima facie case for her retaliation claim, and that even if she does, she again fails to show pretext.

## II.    Standard of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v.

Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256–57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence

of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Discussion

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII), the Age Discrimination in Employment Act. 29 U.S.C. § 621, et seq. (ADEA), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. (NJLAD) prohibit discrimination in the work place based on age and gender, among several other protected classes. Such claims are governed under the familiar McDonnell Douglass burden shifting framework.[2] Pivirotto v. Innovative Sys., 191 F.3d 344, 355-57 (3d Cir. 1999); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108-12 (3d Cir. 1997); Jackson v. Trump Entertainment Resorts, Inc., 149 F. Supp. 3d 503, 509 (D.N.J. 2015); Jones v. Temple Univ., Civil Action No. 12-5349, 2014 WL 3389109 (E.D. Pa. July 10, 2014).

The plaintiff bears the initial burden of establishing the prima facie case. McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802 (1973). She must show that: "(1)

---

[2] Although McDonnell Douglass specifically addressed racial discrimination under the Civil Rights Act, the Supreme Court has since applied the same framework to claims of age and gender discrimination, and the Third Circuit followed suit. See Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003); Jones v. School Dist., 198 F.3d 403 (3d Cir. 1999).

she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred 'under circumstances that give rise to an inference of unlawful discrimination.'" Sarullo v. United States Postal Serv., 352 F.3d at 797; Abinyanka v. Cont'l Airlines, Inc., Civ. No. 2:14-7546 (WJM), 2018 WL 1251632 (D.N.J. March 12, 2018) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 n.6 (1981)). If a plaintiff establishes the prima facie case for discrimination, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglass Corp., 411 U.S. at 802-03. This burden is relatively light and defendants can easily meet the threshold in a variety of ways. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). The burden then shifts back to the plaintiff to show, by a preponderance of the evidence, that the defendant's offered reason is merely pretext for discrimination. Sarullo, 352 F.3d at 797.

Here, Defendant concedes for the purpose of this motion that Plaintiff has established the prima facie case in respect to Defendant's firing Plaintiff, as well as not hiring her as Operations Manager. It is also uncontested that Defendant met its relatively light burden in offering a legitimate reason for firing Plaintiff. Nevertheless, Defendant, in terminating Plaintiff for failing to meet Hammer's new work-place expectations, provides a legitimate non-discriminatory reason for ending her employment. Therefore, to survive summary judgment under the McDonnell Douglass framework, Plaintiff must show that she presents evidence of pretext demonstrating a question of material fact. As the Court will establish below, Plaintiff fails to meet her

burden of proof in regards to her discrimination claims, but succeeds in doing so on her retaliation claim.

## A.   Plaintiff does not present sufficient evidence for a reasonable jury to conclude that Defendant's proffered reason for firing her was pretext.

Plaintiff's evidence does not show inconsistencies in Defendant's offered reason for her termination or demonstrate that discrimination was a likely motivation for the adverse employment action. She thus fails to show that Defendant's legitimate, non-discriminatory reason for ending her employment is pretext.

To survive summary judgment, plaintiffs must present evidence "from which a factfinder could reasonably *either* (1) disbelieve the employer's articulated legitimate reasons; *or* (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Fuentes, 32 F.3d at 764 (emphasis added). Plaintiffs satisfy the first option by presenting evidence of weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions, such that a jury could disbelieve that it was the real reason behind the negative employment action. Id. at 765; see also Jones v. School Dist., 198 F.3d 403, 413 (3d Cir. 1999). It is not enough to state that Defendant's actions were mistaken, or that the plaintiff disagreed with them. Dunleavy v. Montville Twp., Civil Action No. 04-1154 (KHS), 2005 WL 1917610, at *9 (D.N.J. August 9, 2005). Plaintiffs must show that the defendant's decision was "so plainly wrong that it cannot have been the employer's real reason," and that the only logical explanation is that defendant was motivated by discrimination. Id. (citing Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

Plaintiffs can alternatively survive summary judgment by showing that it is more likely than not that age or gender was a but-for cause of the adverse employment action. Fuentes, 32 F.3d at 764. "For example, the plaintiff may show that the employer has previously discriminated against her, that the employer has previously discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the same protected class." Simpson v. Kay Jewelers, 142 F.3d 639, 645 (3d Cir. 1998) (citing Fuentes, 32 F.3d at 765).

Here, Plaintiff first claims that her many years of successful work for American Water, coupled with the positive performance reviews Mr. Li gave her, show that Defendant could not have terminated her for any reason other than age or gender discrimination. However, past positive performance reviews from previous supervisors do not necessarily indicate that a subsequent manager's negative reviews evidence discrimination. Turner v. Schering-Plough Corp., 901 F.3d 335, 343-44. This is especially true where both the previous manager's and new manager's reviews highlight similar deficiencies in the plaintiff's performance. Id.; Baldwin v. Gramiccioni, Civil Action No. 16-1675 (FLW) (DEA), 2019 WL 22881580, at *13 (D.N.J. May 29, 2019) (stating that plaintiff's previous performance evaluations were not probative of pretext because he had received several positive and several negative reviews); Anderson v. Boeing Co., Civil Action No. 15-3073, 2016 WL 9446648, at *18 (E.D. Pa. Aug. 30, 2016) ("[o]ne favorable review from a previous supervisor under one set of criteria offers insufficient proof to establish pretext with respect to a later evaluation set by a different supervisor who was employing a different set of criteria.")

13

Here, the issues Hammer identified in the PEP were not new. The areas Plaintiff needed to improve upon were first identified in Mr. Li's 2013 and 2015 performance reviews, despite her overall commendable rating. Hammer then told Plaintiff that he expected her to improve in these areas as well, first informally and then again in her 2016 mid-year review. He also reiterated his expectations in the PEP. Only after all this did Defendant terminate Plaintiff for her failure to meet Hammer's expectations. Hammer perceived Plaintiff's deficiencies more negatively than did Mr. Li, particularly because he was evaluating her performance under different criteria. Hammer never made discriminatory comments to Plaintiff and did not mention her age or gender in the PEP. Plaintiff's earlier performance reviews thus do not prove that Hammer's reason for firing her was pretext for discrimination.

Plaintiff next contends that Hammer's failure to follow the thirty-day PEP plan also evidences pretext. However, just because Hammer recommended that Human Resources terminate Plaintiff's employment before the end of the first thirty day period on the PEP does not mean that his doing so demonstrated any inconsistencies, or incoherencies.[3] The only reason Hammer and Defendant provide for terminating Plaintiff is that she was unable to meet the new expectations that he set for her. Moreover, this does not show that discrimination more likely than not motivated Hammer's decision. The PEP itself contemplates the possibility that Plaintiff could be terminated at any time. But even if Hammer wanted to terminate Plaintiff's

---

[3] As will be discussed later, this may constitute evidence of retaliation, but does not clearly speak to discrimination.

employment, that does not inherently mean that age or gender discrimination motivated him to do so.

Plaintiff also asserts that Hammer's inability to remember during his deposition whether he or Human Resources terminated her evidences pretext because it shows inconsistencies with Defendant's offered reasons. However, Hammer's inability to remember who made the final decision to terminate Plaintiff is not the sort of inconsistency contemplated in Fuentes. The only reason Hammer, Salamone, Delles, and Kennedy provide for terminating Plaintiff's employment is that despite trying to improve her performance, she failed to meet Hammer's new employment expectations. The fact that Hammer could not remember exactly who made the decision to terminate Plaintiff at the time of his deposition—nearly two years later—does not implicate Defendant's proffered reasons for doing so, especially since Hammer eventually submitted a signed declaration stating that he, in fact, made the decision.

In addition, Plaintiff asserts that both Defendant and Hammer tended to treat older women poorly, and that this pattern illustrates discriminatory behavior and pretext under the second Fuentes factor. However, Plaintiff does not present sufficient comparator evidence for a reasonable jury to conclude that this is the case. Comparators must be similarly situated in all relevant respects, including "similarities between the requirements, duties, and responsibilities of the respective jobs . . . [and] the conduct (or misconduct) in which each employee engaged." Baldwin, 2019 WL 2281580, at *23-4 (citing Dill v. Runyon, No. 96-3584, 1997 U.S. Dist. LEXIS 4355, at *12 (E.D. Pa. 1997)).

Here, Plaintiff first attempts to compare herself to another older woman whose employment at American Water was discontinued. (Pl. Dep. 88:19-90:20.) Ms. Degillio, American Water's Treasurer, mentioned to Plaintiff that this woman had worked at American Water for over twenty years and was terminated because of her attitude. (Id. at 90:1-20.) However, Plaintiff presents no evidence that this woman held the same position or had responsibilities similar to those of Plaintiff's. (Id. at 89:21-90:20). In fact, she worked in a completely different part of the company. (Id.) Furthermore, Ms. Degillio did not tell Plaintiff that this woman was not rehired because of her age and gender, but because of "her attitude." (Id. at 90:6-7.) Finally, this woman was not rehired after she was transferred to the New Jersey region from another branch of the company. (Id. at 89:22-24.) The circumstances were thus entirely different and do not present sufficient comparator evidence.

Next, Plaintiff attempts to compare herself to Lynn McClenahan, another older woman working in the treasury department who was also placed on a PEP. However, McClenahan is not a valid comparator either. She did not have the same job title and did not work in the same office as Plaintiff. (McClenahan Dep. 10:12-11:20; 19:22-23.) After working under Mr. Li, McClenahan reported only briefly to Hammer and then primarily reported to William Roberts. (Id. at 11:13-15.) Although Hammer recommended that Roberts evaluate McClenahan's analytical abilities, Roberts made the decision to place her on a PEP and supervised that process. (Roberts Dep. 26:6-28:14.) Importantly,

16

McClenahan ultimately completed the PEP successfully and, as of the date of her deposition, still works as American Water.[4] (McClenahan Dep. at 10:3-4; 31:1-2.)

Additionally, Hammer's supposedly lenient treatment of William Roberts is not adequate comparator evidence either. Although Roberts was Hammer's only other direct report and was over the age of forty, his job title and responsibilities were entirely different from those of Plaintiff. (Pl. Dep. 98:5-11.) Therefore, none of the parties with whom Plaintiff attempts to compare herself is a valid comparator.

Furthermore, Plaintiff's claims that Hammer targeted her because he did not copy her on pertinent emails, sped up deadlines, and assigned meaningless tasks that does not show pretext. Plaintiff herself testified that Hammer treated a lot of people like this; "bullied" them into getting things done and finishing his assignments. (Id. at 174:1-24.) Hammer never made gender or age-based comments to Plaintiff regarding her work, and Plaintiff does not present evidence that he did so to anyone else. Plaintiff therefore fails to present sufficient comparator evidence to show an ongoing pattern of age or gender discrimination.

The only fact that speaks to a discriminatory motive behind Plaintiff's firing is the fact that Hammer hired the "substantially younger" Courtney Gillespie, to replace her. [Dkt. 45-12, Doc. 12, at ¶ 91.] However, Gillespie's being "younger" than Plaintiff does not present inconsistencies in Defendant's proffered reasoning for firing Plaintiff, since that alone does not negate the fact that Plaintiff failed to meet Hammer's expectations.

---

[4] Ms. McClenahan no longer works in the treasury department. Nevertheless, she had only positive things to say about both Hammer and Roberts as managers, and did not have any negative experiences with them, despite their rocky start. (McClenahan Dep. 31:2-9.)

Additionally, there is no evidence that Hammer treated Gillespie, or anyone else, better than he did Plaintiff. Hammer testified that he had some difficulty with Gillespie as well and even considered placing her on a PEP, but decided against it after speaking with Human Resources. (Hammer Dep. 244:11-245:20.) Gillespie then left the company of her own accord shortly thereafter and Hammer hired another "young" woman, Samantha Ahern, who still works at American Water. [Dkt. 40-2, Doc. 2 at ¶ 72.] But aside from the fact that the Company still employs Ms. Ahern, Plaintiff offers no evidence of the way Hammer treats her. Finally, Plaintiff only briefly mentions this fact in her Additional Facts that Preclude Summary Judgment, and does not rely on it in her brief. There is thus no evidence indicating that discrimination more likely than not motivated Hammer's decision to end Plaintiff's employment.

Plaintiff does not present sufficient evidence for a reasonable jury to conclude that Defendant's offered reasons for firing her were pretext. Therefore, Defendant's Motion for Summary Judgment on this claim will be granted.

**B.    Plaintiff fails to present evidence from which a reasonable jury could conclude that Defendant discriminated against her by selecting a different candidate as Operations Manager.**

Plaintiff does not present an issue of material fact as to this claim, because she fails to offer evidence other than her own opinion regarding her qualifications for the position. The prima facie case for discrimination in hiring practices is the same as above, and follows the McDonnell Douglass factors. Abaniyanka v. Cont'l Airlines, Inc., Civ. No. 2:14-7546(WJM), 2018 WL 1251632, at *6-7 (D.N.J. March 12, 2018).

Defendant again concedes for the purposes of this motion that Plaintiff has satisfied the prima facie case.

To satisfy the fourth prong of the prima facie case, Plaintiff must show that "[u]nder circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with *qualifications similar to plaintiff's* to fill the position." Sarullo, 325 F.3d at 797 (citing McDonnell Douglas, 411 U.S. at 802) (emphasis added). However, Plaintiff does not provide even a scintilla of evidence regarding the qualifications of the candidate hired to fill the Operations Manager position. Plaintiff testified in her deposition that a Human Resources representative told her that a younger person was selected as Operations Manager. But Plaintiff did not know anything about the qualifications that the chosen candidate possessed or how they differed from her own.

Furthermore, even if the prima facie case was established here, Plaintiff's claim fails because she does not present evidence that Defendant's offered reasons are pretext. "A plaintiff's disagreement with assessment criteria and belief that he or she is better qualified for the position is not sufficient to avoid summary judgment." Jackson v. Trump Entertainment Resorts, Inc., 149 F. Supp. 3d 503, 509 (D.N.J. 2015). Moreover, "[a]n interview is a subjective process. How an employee presents herself at an interview is often a determining factor in awarding a position." Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1153, 1176 (D.N.J. 1996). A plaintiff's own opinion or perception of her interview is irrelevant. Id. "What is critical is the perception of the Interviewers." Id. (quoting Billet, 940 F.2d at 825). A company is entitled to make its own business decisions, absent evidence of discrimination. Id. at 1172. Moreover, plaintiffs generally

must offer evidence demonstrating the qualifications of other promoted candidates. Baldwin, 2019 WL 2281580, at *37.

Here, Plaintiff fails to show that she was not hired as an Operations Manager because of her age or gender. Plaintiff testified that she interviewed for the position and believed that the interview went well. She thought that she was qualified for the position and that her many years of experience at the company weighed in her favor. (Pl. Dep. 178:8-20.) When she was not chosen for the position, she believed that her age was the primary explanation, especially after hearing that a younger candidate was selected instead. (Id.)

However, Human Resources told Plaintiff that she was not chosen for the position because American Water did not want to take the time to train her for it. Plaintiff did not know whether the chosen candidate was already trained for the position, or what his/her qualifications were. In fact, Plaintiff did not know the person's name. (Id. at 178:23-24.) And Plaintiff has not presented any evidence other than her own testimony on the matter. Therefore, Plaintiff's claim that she was not chosen because of her age is not supported by the record.

Furthermore, as mentioned above, the interview process is extremely subjective. Just because Plaintiff felt that her interview went well did not guarantee that Defendant would choose her for the position. The fact that Plaintiff was not selected for the position does not, absent any other indicia of discrimination, indicate that her age or gender was a motivating factor in that hiring decision. Because Plaintiff's claim is unsupported by evidence in the record, Defendant's Motion for Summary Judgment on this claim will be granted.

**C.   Plaintiff presents sufficient evidence of retaliation claim to create an issue of material fact.**

Plaintiff finally asserts that Defendant's firing her after she filed an age and gender discrimination complaint with Human Resources was retaliatory, and thereby violated Title VII, the ADEA, and NJLAD. [Dkt. 45, at 13.] Defendant maintains that Plaintiff does not present evidence to establish the third prong of the prima facie case and that, even if she has done so, she still cannot show pretext. This Court holds that Plaintiff offers sufficient evidence to present a material question of fact about both the prima facie case and pretext. Therefore, Defendant's motion on this claim is denied.

To successfully establish a prima facie case of retaliation, a plaintiff must show that: "(1) [s]he engaged in a protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between [her] participation in the protected activity and the adverse employment action." Jackson, 149 F. Supp. 3d at 509 (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). The third element is established where a plaintiff shows a causal link between her "opposition to . . . unlawful discrimination," and the adverse employment action. Moore, 461 F.3d at 342. Evidence of close temporal proximity between the protected action and Plaintiff's termination, as well as an ongoing pattern of antagonism, can satisfy the element of causation. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); Kachmar v. SunGuard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997). However, these factors are not exclusive, and where the evidence taken as a whole, supports an inference of retaliation, causation will be established. Kachmar, 109 F.3d at 177; Jackson, 149 F. Supp. 3d at 509.

Here, the critical dates to analyze are Plaintiff's September 1, 2016 complaint to Human Resources and her ultimate termination exactly two months later, on November 1, 2016. While it is true that Plaintiff's termination—thirty days after starting the PEP—occurred shortly after she engaged in a protected activity, that temporal proximity alone is not sufficiently suggestive of retaliatory motive. Plaintiff had already been placed on the PEP before she formally complained to Human Resources, and the PEP itself contemplated the possibility of termination within thirty days of its start. Although Plaintiff received years of positive performance reviews from Mr. Li, she had also received multiple warnings from Hammer, both formally and informally, that he was unsatisfied with her work product. Therefore, that she was terminated at the PEP's earliest possible checkpoint does not, in and of itself, establish the required causal link.

Nevertheless, the fact that Hammer knew about Plaintiff's discrimination complaint and subsequently recommended that Human Resources terminate Plaintiff even *before* the PEP's thirty day mark does evidence retaliatory motive. Specifically, Hammer sent Ms. Salamone a copy of Plaintiff's resume with his thirty day evaluation of Plaintiff's progress on the PEP on October 13, 2016. Importantly, this happened two and a half weeks before the end of the first thirty days that Plaintiff was on the PEP, and only a month and a half after her complaint. [Dkt. 45-9, Ex. 9.] This short lapse of time creates a temporal nexus between Plaintiff's complaint and the negative employment action.

Similarly, although there is no evidence that Hammer antagonized Plaintiff after the PEP started, the fact that Hammer had a rocky relationship with Plaintiff before establishes an ongoing pattern of antagonism. Plaintiff explained that Hammer spoke

22

condescendingly to her, accelerated deadlines, and gave her nonsense assignments. The fact that the antagonism seemingly stopped after Plaintiff was put on the PEP does not mean that an ongoing patter of antagonism did not exist. It is possible that Plaintiff's termination was just the final step in a series of antagonistic behaviors, which a reasonable factfinder could conclude establishes the element of causation. Plaintiff therefore presents sufficient evidence of the <u>prima facie</u> case to survive summary judgment.

Since it is undisputed that Defendant meets its relatively light burden in presenting a legitimate reason for Plaintiff's termination, the Court next considers whether Plaintiff sufficiently shows Defendant's actions were pretext. The pretext analysis here is the same as above. To survive summary judgment, Plaintiff can *either* demonstrate evidence that could make a reasonable factfinder disbelieve the employer's reasons, *or* that would make the factfinder believe that discrimination was more likely than not the motivating factor. <u>Fuentes</u>, 32 F.3d at 764. Evidence used to prove the <u>prima facie</u> case is often analyzed under pretext as well. <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 286 (3d Cir. 2000).

Here, Plaintiff proffers enough evidence of pretext to survive summary judgment. The fact that Hammer recommended two weeks before the first available opportunity that Human Resources terminate Plaintiff's employment creates a question of fact as to whether a retaliatory motive was more likely than not the true reason for the adverse employment action. The potential presence of an ongoing pattern of antagonism also prevents the Court from deciding the issue of pretext as a matter of law. As mentioned above, a reasonable fact finder could conclude that Plaintiff's termination was just the

last step in a series of antagonistic actions, and that it was more likely than not taken in response to Plaintiff's complaint to Human Resources. Defendant's Motion for Summary Judgment on Plaintiff's retaliation claim is thus denied.

IV.    Conclusion

For the foregoing reasons, Plaintiff fails to meet her burden of proof in showing that Defendant's explanation for firing her, as well as for selecting another candidate as Operations Manager, was pretext for discrimination. However, she establishes a question of material fact regarding her retaliation claim. Consequently, Defendant's Motion for Summary Judgment will be granted with respect to Plaintiff's discrimination claims and denied with respect to her retaliation claims.

An accompanying order shall issue.

Dated: May 6, 2020                              s/ Joseph H. Rodriguez
                                                Hon. Joseph H. Rodriguez,
                                                UNITED STATES DISTRICT JUDGE